IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| RAUL BARRON,<br>Institutional ID No. 01512364 | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 5:25-CV-094-H-BV |
| | § | |
| MARSHA MCLANE, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff Raul Barron alleges that Defendant Marsha McLane enacted and

enforces a policy that unlawfully takes a portion of his veteran disability benefits in

violation of federal law and his constitutional rights. Dkt. No. 1. McLane moves to

dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). For the

reasons explained further below, the undersigned concludes that Barron's official-

capacity claims against McLane for monetary relief and retrospective declaratory relief

are barred by sovereign immunity, while his claims for prospective injunctive relief are

not. Even so, Barron has not pleaded sufficient facts to state a violation of federal or

constitutional law. Thus, the undersigned magistrate judge recommends that the district

judge **GRANT** McLane's motions and dismiss Barron's complaint. Dkt. No. 9.

**1.    Barron objects to a policy that requires him to pay a portion of his military disability benefits as a cost-recovery fee for his SVP treatment.**

Barron was tried and civilly adjudged to be a sexually violent predator (SVP), as defined by Texas Health & Safety Code § 841.003.  After he completed his criminal sentence, Texas transferred him to the Texas Civil Commitment Center (TCCC)/Bill Clayton Detention Center in Littlefield, Texas, where he remains confined for inpatient treatment in accordance with the provisions of Texas Health & Safety Code § 841.081. Dkt. No. 1 at 5, 8.[1]  McLane serves as the Executive Director of the Texas Civil Commitment Office (TCCO), which administers Texas's SVP civil-commitment program.

Barron alleges that when he arrived to the TCCC in 2020, his case manager informed him that the TCCO would require him to pay 33% of all income every month, including his Department of Veterans Affairs (VA) disability benefits.  *Id.* at 8.  The case manager advised that this cost-recovery fee paid "back expenses incurred by the state for its civil commitment program."  *Id.*  Barron objected, stating that his VA benefits were protected by federal law, and he could not be required to pay the fee using those sums. *Id.*  But Barron's case manager required Barron to pay.  *See id.* at 5, 8–9.  According to Barron, McLane "used" the case manager "to ensure that [Barron] consistently paid the required fee" upon his arrival.  *Id.* at 5.

The case manager reviewed Barron's bank statements, required Barron to take polygraphs, and "audited" Barron's bank account to ensure Barron had disclosed all

---

[1] Page citations to Barron's complaint refer to the electronic page number assigned by the Court's electronic filing system.

relevant financial information. *Id.* at 8–9. The case manager further threatened Barron with disciplinary action—including loss of commissary and package privileges—if Barron "did not comply." *Id.* at 9. Sometime between 2020 and 2025, TCCO reduced the fee to 25% of Barron's income. *Id.* He estimates that over a four-year period he has paid "at least $35,000 in cost recovery fees." *Id.*

Based on the foregoing, Barron sues McLane for implementing and enforcing the cost-recovery policy, alleging that the policy violates his Fourth and Fourteenth Amendment rights. *See id.* at 2-3, 5, 8–9. Barron also alleges that deducting the fee from his VA benefits violates 38 U.S.C. § 5301 (the "anti-assignment claim"). *Id.* Barron does not specify the capacity in which he sues McLane. *Id.* Barron seeks declaratory and injunctive relief and monetary damages. *Id.* at 6.

**2.      McLane moves to dismiss under Rule 12(b)(1) and (b)(6).**

McLane moves to dismiss Barron's complaint under Rule 12(b)(1) and (b)(6). Dkt. No. 9. To the extent Barron sues McLane in her official capacity, McLane argues the claims are barred by sovereign immunity. Dkt. No. 10 at 7–9. McLane also maintains that she is not a suable "person" under § 1983. *Id.* at 9.

In addition, McLane asserts Barron has not pleaded adequate facts establishing a policy claim. First, McLane alleges Barron has not shown McLane was personally involved in the alleged violation or that she implemented an unconstitutional policy. *Id.* at 9–11. Next, McLane states that Barron's complaint does not set forth adequate facts showing a Fourth or Fourteenth Amendment claim, nor has he demonstrated a violation of § 5301. *Id.* at 11–19.

Finally, McLane maintains she is entitled to qualified immunity for any individual-capacity claims. *Id.* at 19. In McLane's view, not only has Barron failed to allege a violation, but the law was not clearly established. *Id.* at 20–23.

### 3. Barron's claims should be dismissed.

#### A. Applicable legal standards

##### i. Rule 12(b)(1)

Rule 12(b)(1) authorizes a party to seek dismissal due to a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Dismissal under Rule 12(b)(1) is appropriate if a claim is barred by state sovereign or Eleventh Amendment immunity." *Shaikh v. Tex. A&M Coll. of Med.*, 739 F. App'x 215, 217 (5th Cir. 2018) (per curiam) (citations omitted). The party asserting jurisdiction bears the burden of demonstrating its existence. *Id.* (citation omitted). "A court may dismiss under Rule 12(b)(1) on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 217–18 (citation and internal quotation marks omitted). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* at 218 (citation omitted).

##### ii. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007); *see Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering 12(b)(6) motions, courts must accept well-pleaded facts (not mere conclusory allegations) as true and view them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555 (explaining that a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (stating that courts accept all well-pleaded facts as true, but "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility"). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### iii.    Section 1983 and Qualified Immunity

"A plaintiff makes out a § 1983 claim if he shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law." *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (internal

5

quotation marks, brackets, and citation omitted). "But government officials performing discretionary duties can assert [qualified immunity]." *Id.* at 294. "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted).

When an official raises the affirmative defense of qualified immunity, the court must conduct a two-step analysis to determine whether: (1) the plaintiff has demonstrated the official's conduct violated a constitutional or statutory right; and (2) the right was "clearly established" at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may address either prong first. *Id.* at 236. A plaintiff bears the burden of negating a properly asserted qualified immunity defense. *Brumfield*, 551 F.3d at 326. When a defendant raises the defense in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis omitted).

**B.     Analysis**

      **A.     The Court lacks subject-matter jurisdiction over Barron's official-capacity claims for money damages and retrospective declaratory relief.**

McLane generally asserts that Barron's official-capacity claims against her are barred by sovereign immunity. Dkt. No. 10 at 7. McLane's argument makes no distinction between Barron's claims for monetary damages and injunctive or declaratory relief. *See id.* at 7–9.

6

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" because they serve as substitutes for the State itself. *Id.* "States are immune from private suits unless they consent or unless Congress validly strips their immunity." *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 671 (5th Cir. 2022).

Barron has not shown that Texas has consented to be sued, nor has Congress clearly and validly abrogated immunity under §§ 1983 or 5301. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (explaining that § 1983 gives no indication "on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States"); 38 U.S.C. §§ 5301–07. Thus, the Court lacks subject-matter jurisdiction over Barron's official-capacity claims for money damages.

Barron also alleges claims for injunctive and declaratory relief.[2] Under the *Ex parte Young* exception, sovereign immunity does not bar claims for prospective,

---

[2] McLane incorrectly states that "Barron does not specify what relief he seeks." Dkt. No. 10 at 5. Based on this mistaken conclusion, McLane did not specifically address whether Barron's claims for injunctive and declaratory relief are barred by sovereign immunity. Nevertheless, because Barron was generally on notice that McLane seeks dismissal under Rule 12(b)(1), and the Court has a duty to examine its jurisdiction, the undersigned has considered the claims herein. Moreover, these findings, conclusions, and recommendation provide Barron additional notice of the deficiencies in his claims for equitable relief. *See Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021) (stating that district court could "*sua sponte* dismiss [plaintiff's] complaint" because all claims were "barred by sovereign immunity" but dismissal must be without prejudice).

7

equitable relief based on an ongoing violation of federal law. *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–56 (2011); *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). To meet the *Young* exception, "[t]he suit must: (1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *Williams*, 954 F.3d at 736.

Here, Barron's claims for declaratory relief are retrospective. *See* Dkt. No. 1 at 6. He wants the Court to declare that McLane violated § 5301, as well as the Fourth and Fourteenth Amendments. *Id.* Thus, the *Young* exception does not apply. *Williams*, 954 F.3d at 736.

Conversely, Barron's claims for injunctive relief are prospective. Dkt. No. 1 at 6. Barron contends that McLane implemented and is enforcing a policy of assessing fees based on his VA benefits in violation of the Constitution and § 5301, and he asks the Court to enjoin McLane from "further unlawful takings and harm based thereon." *Id.* at 5–6. Thus, the *Young* exception applies to that claim, and the undersigned concludes the Court has subject-matter jurisdiction over Barron's claims for injunctive relief.

In sum, the undersigned recommends that the district judge grant-in-part McLane's Rule 12(b)(1) motion and dismiss without prejudice Barron's official-capacity claims against McLane for money damages and retrospective declaratory relief. But the district judge should deny McLane's Rule 12(b)(1) motion as to Barron's official-capacity claims against McLane for injunctive relief.

## B.    Barron fails to state a Fourth Amendment claim.

Barron asserts that McLane's purported implementation and enforcement of a policy requiring him to pay the cost-recovery fee using his VA benefits violates his Fourth Amendment rights. Dkt. No. 1 at 5–6, 8–9. Barron's allegations are imprecise, but the Court understands him to allege that the TCCO calculates the fee based on all income, including his VA disability benefits, and he pays the fee to avoid disciplinary action. *See id.* The Court does not understand Barron to claim that the TCCO unilaterally deducts the fee from Barron's account. *See id.*

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. "A seizure of property occurs when there is 'some meaningful interference with an individual's possessory interests in that property.'" *Morris v. Livingston*, 739 F.3d 740, 751 (5th Cir. 2014) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). "As [the Fourth Amendment's] text makes clear, the ultimate touchstone of the Fourth Amendment is reasonableness." *Lange v. California*, 594 U.S. 295, 301 (2021) (internal quotation marks and citation omitted).

McLane first argues that imposition of the cost-recovery fee is not a "seizure" within the meaning of the Fourth Amendment. Dkt. No. 10 at 11–13. McLane points to § 841.084 of the Texas Health and Safety Code, which provides that an SVP "who is not indigent . . . is responsible for the cost of . . . housing and treatment" and GPS tracking services, as well as any costs to repair the tracking devices if they are intentionally lost or damaged. Tex. Health & Safety Code § 841.084(a)(1). Non-indigent SVPs are required

9

to pay the TCCO "a monthly amount . . . to defray the cost of providing the housing, treatment, and service." *Id.* § 841.084(a)(2).

Because non-indigent SVPs are assessed a fee in exchange for the provision of treatment, housing, and GPS tracking (a requirement during, *inter alia*, the initial tiers of commitment, § 841.082), the cost-recovery fee is likely not a seizure. *Morris*, 739 F.3d at 752 (expressing doubt whether a health care services fee was "a seizure given its nature as a fee charged in exchange for the provision of medical care"); *see Reynolds v. Wagner*, 128 F.3d 166, 180 (3d Cir. 1997) (explaining that "in exchange for the fees, the inmates receive the benefit of health care, the value of which undoubtedly exceeds the modest fee assessed").

Regardless, Barron has not shown that the cost-recovery policy or its enforcement is unreasonable. The policy fulfills § 841.084's requirement—that non-indigent SVPs contribute toward the cost of housing and treatment. A policy aimed at satisfying a statutory provision intended to control budgetary concerns is not unreasonable. *See Morris*, 739 F.3d at 752 (concluding prisoner "ha[d] not shown that the taking of funds from his inmate trust fund account to pay for his medical care was unreasonable in light of the goal of controlling the prison budget"). Barron does not dispute the budgetary concern. *See* Dkt. Nos. 11, 13.[3]

---

[3] Barron filed an initial response to McLane's motion, Dkt. No. 11, and then filed a "supplemental brief." Dkt. No. 13. Although Barron did not seek leave to file the supplemental document and it is untimely, the undersigned has considered it.

Because assessment of a cost-recovery fee is not a seizure, nor is it unreasonable considering the need to control the budget for housing and treating SVPs, the undersigned concludes Barron has failed to state a Fourth Amendment claim. Thus, the district judge should grant McLane's Rule 12(b)(6) motion and dismiss Barron's Fourth Amendment claim against McLane in her official capacity for injunctive relief and against McLane in her individual capacity.

### C.    Barron fails to show a violation of his procedural due process rights.

Barron asserts that McLane assessed the cost-recovery fee "without providing [him] the opportunity to be heard regarding th[e] matter, in a meaningful time and in a meaningful manner" in violation of his due process rights. Dkt. No. 1 at 3, 5. McLane maintains that Barron's claim "fails because (1) [he] was provided pre-deprivation due process when he was adjudicated a[n SVP] . . ., and further, because (2) [he] was provided post-deprivation due process." Dkt. No. 10 at 13.

To state a procedural due process claim, "a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Morris*, 739 F.3d at 750 (citation omitted). If he does so, a plaintiff must also establish that the deprivation was not "preceded by notice and an opportunity for the individual to be heard." *Id.*; *see Mathews v. Eldridge*, 424 U.S. 319, 333, 348 (1976). "Procedural due process is 'a flexible concept,' and the procedural protections due under the Fourteenth Amendment vary depending on the circumstances."

11

*Richards v. McLane*, No. 21-20450, 2023 WL 6533453, at \*7 (5th Cir. Oct. 6, 2023)

(quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).

Barron acknowledges that upon his arrival to the TCCC, he learned from his case

manager that he would be required "to pay out 33% of all income [Barron] received

while residing at" the TCCC.[4] Dkt. No. 1 at 8. Barron also generally received notice and

an opportunity to be heard during the civil commitment process. *See* §§ 841.061, .062

(providing that an individual is entitled to a trial, where a judge or jury must find beyond

a reasonable doubt that the individual is an SVP); § 841.084 (providing that an SVP may

be required to contribute to the costs of housing and treatment). In being adjudicated an

SVP, Barron became subject to Chapter 841 of the Health and Safety Code, which

expressly provides that SVPs may be required to contribute to the costs of their care.

§ 841.084. And "[w]hen the legislature enacts a law . . . that affects a general class of

persons, all of those persons have received procedural due process by the legislative

process itself and they have no right to individual attention." *Matzen v. McLane*, 659

S.W.3d 381, 392 (Tex. 2021) (quoting *United States v. LULAC*, 793 F.2d 636, 648 (5th

Cir. 1986)) (rejecting SVP's contention that amended commitment order assessing cost-

---

[4] Barron arrived to the TCCC in 2020, but he did not file this action until 2025. Because it appears Barron filed his complaint more than two years after he learned of the alleged violations, it appears at least some claims are time-barred. "The statute of limitations is an affirmative defense that is usually waived if not timely pleaded by a defendant." *Ogbebor v. Hardy*, No. 24-30403, 2025 WL 586822, at \*2 (5th Cir. Feb. 24, 2025) (cautioning district courts against "raising waivable affirmative defenses *sua sponte*," including the affirmative defense of statute of limitations). "[D]ismissal under Rule 12(b)(6) [may be] proper" "[i]f, based on the facts pleaded and judicially noticed, a successful affirmative defense appears." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam). McLane did not mention this potential defense, so the undersigned has not considered it here, although it may form an alternative basis for dismissal. *See Williams*, 2025 WL 2773806, at \*7.

recovery fee in accordance with amended Chapter 841 violated his due process rights, holding that "TCCO need not provide each SVP with individualized process every time it alters generally applicable rules or policies governing committed SVPs").

Finally, Barron concedes that he complained about the fee verbally to his case manager and "via demand letter" to the TCCO. Dkt. No. 1 at 8–9 (cleaned up). As argued by McLane, Barron can avail himself of the TCCC grievance process to dispute the fee or address other issues. Dkt. No. 10 at 15–16; *see also Williams v. McLane*, No. 5:24-CV-00248-H, 2025 WL 2773806, at *11 (N.D. Tex. Sept. 26, 2025) (Hendrix, J.) (rejecting plaintiff's contention that TCCO's cost-recovery policy violated his procedural due process rights in party because plaintiff "received notice of the initial cost-recovery assessment and periodic notices of his increasing debt obligation," and he had access to and used the grievance process).

In sum, Barron has not pleaded sufficient facts showing he was unconstitutionally deprived of notice and an opportunity to be heard about the cost-recovery fee. The undersigned therefore recommends the district judge grant McLane's Rule 12(b)(6) motion and dismiss Barron's due process claim against McLane in her official capacity for injunctive relief and against McLane in her individual capacity.

### D.    Barron has not stated a claim under § 5301.

The crux of Barron's complaint is that to the extent the cost-recovery fee is calculated on and paid with his VA benefits, it violates § 5301. *See* Dkt. No. 1 at 5 (claiming McLane "has required [him] to pay 33% and 25% of this monthly [VA benefits] income in violation of . . . 38 U.S.C. § 5301(a)(1) (cleaned up)), 9 (stating that

13

he "paid the 33% TCCO cost-recovery fee (cleaned up)); Dkt. Nos. 11, 13 (focusing his response to the motion to dismiss on § 5301). Stated differently, Barron complains not only about the calculation of the cost-recovery fee but also the fact that he pays the fee using his VA benefits. *See* Dkt. No. 1 at 5, 8–9. According to Barron, he has paid about "$35,000 in cost-recovery fees." *Id.* at 9 (cleaned up).

Section 5301 provides that VA benefits "shall not be assignable except to the extent specifically authorized by law, and such payments" are "exempt from taxation" and "the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1). The Fifth Circuit has assumed but not determined "that Section 5301(a) may be privately enforced through Section 1983." *Hawes v. Stephens*, 964 F.3d 412, 415 (5th Cir. 2020). The undersigned similarly assumes such here. *See also Higgins v. Beyer*, 293 F.3d 683, 689 (3d Cir. 2002) (concluding "that § 5301(a) provides a federal right that is enforceable under § 1983").

Although Barron can enforce § 5301 in this civil-rights action, he has not stated a claim because he has not pleaded any facts showing that TCCO has attached, levied, or seized his VA benefits through a legal or equitable process in violation of § 5301, nor has he shown TCCO's calculation of the fee is unlawful. Barron disputes assessment of the cost-recovery fee calculated on VA benefits money and that TCCO requires him to pay the fee or face disciplinary action. Dkt. No. 1 at 5, 8–9. But Barron admits that he pays the fee to avoid being "punished with restrictions." *Id.* at 9. He pleads no facts

14

suggesting that TCCO officials are deducting the money from his account without his consent or have otherwise seized his funds.

Based on the facts alleged, McLane and the TCCO do not appear to be attaching, levying, or seizing Barron's VA benefits. *See Wash. State Dep't of Soc. & Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 371, 383 (2003) (describing "execution, levy, attachment, or garnishment" as "legal terms of art [that] refer to formal procedures by which one person gains a degree of control over property otherwise subject to the control of another, and generally involve some form of judicial authorization");[5] *Wilson v. Sec'y, Dep't of Corr.*, 54 F.4th 652, 665 (11th Cir. 2022) (observing that § 5301 does not define "seizure" but that in 1935, when Congress added the word, the term meant "'[t]o take possession of, or appropriate, in order to subject to the force or operation of a warrant, order of court, or other legal process'" (quoting *Webster's New International Dictionary of the English Language* 2268 (2d ed. 1935)).

Nor is the TCCO engaging in an attachment, garnishment, or levy through "legal or equitable process." Barron admits that he pays the fee to avoid disciplinary action, and he presents no claim that the TCCO has used a judicial mechanism or other form of legal process to gain control of his benefits. *Cf. Reed v. Taylor*, 923 F.3d 411, 413, 416–18 (5th Cir. 2019) (rejecting SVP's contention that requiring him to pay for GPS

---

[5] In *Keffeler*, the Supreme Court was interpreting 42 U.S.C. § 407, which protects Social Security benefits—not VA benefits. *See* 537 U.S. at 375. But § 407 and § 5301 use similar language and both relate to protection of government benefits. *See Higgins*, 293 F.3d at 691 ("recogniz[ing] that the language used by Congress in protecting Social Security benefits in § 407(a) is not precisely the same as the words it employed in § 5301(a)," but "its reach is essentially the same" (quoting *Nelson v Heiss*, 271 F.3d 891, 895)). Because of the similarity in language and purpose, the undersigned finds cases interpreting § 407 instructive.

monitoring—when Social Security was his only source of income—or face criminal prosecution violated § 407, because "[a] threat of future action is not an 'exercise of some sort of judicial or quasi-judicial authority to gain control over another's property'" (quoting *Keffeler*, 537 U.S. at 386)).

The few cases discussing § 5301's application support the undersigned's conclusion that McLane has not impermissibly calculated the fee based on Barron's VA benefits or unlawfully seized or levied those benefits. In *Nelson v. Heiss*, the plaintiff had authorized withdrawal of VA funds to pay for copies of his medical records and dental appliances, but he did not have the funds to cover the expenses at the time, resulting in the prison placing a hold on his inmate trust account. 271 F.3d 891, 893 (9th Cir. 2001). The Ninth Circuit held that prison officials violated plaintiff's statutory rights under § 5301 by placing the hold. *Id.* at 896. In so concluding, the court rejected the officials' arguments that plaintiff's consent or the fact that the expenses were for his "maintenance and care" placed the hold outside § 5301's prohibition on assignment, attachment, or levy. *Id.* at 895–96. The court noted, however, that the only issue before it was the overdraft/hold—it did "not opine upon[] whether the trust account program as presently structured operate[d] properly when there [were] funds in the account." *Id.* at 895 n.5. Barron does not allege TCCO officials have placed a hold on his trust account. *See* Dkt. No. 1.

Moreover, the Third Circuit held that prison officials' seizure of VA benefits in a prisoner's trust account to pay a court-ordered fine violated § 5301. *Higgins*, 293 F.3d at 685. In part, the court reached this conclusion because it found that the officials'

16

collection of funds from the prisoner's account was a "levy"—i.e., a "seizure of property to satisfy a judgment." *Id.* at 693. But here, Barron has not shown that TCCO levied or otherwise seized VA funds from his trust account.

In *Hawes*, the Fifth held that a prisoner failed to state a claim under § 5301 where his VA benefits were comingled "with sizeable deposits by a private individual, [making] it . . . impossible to know whether [a] medical co-payment was charged against funds that originated from" the VA. 964 F.3d at 417. The Fifth Circuit expressly stated that although the district court correctly granted summary judgment, it did "not endorse the analysis of the magistrate judge or district court." *Id.* at 415. Thus, the Fifth Circuit's holding appears limited to its conclusion that because the co-pay deductions could have come from funds other than the VA benefits, the prisoner had failed to state a claim. *See id.* at 415–17. Barron does not allege that he receives money from sources other than his VA benefits, and his response indicates that any other funds he does receive are not comingled. *See* Dkt. Nos. 1; 11 at 2; 13 at 2. Thus, the officials in *Hawes* "deducted" the funds from the prisoner's account to pay for the co-pay, critical facts that distinguish *Hawes* from the instant situation.

In sum, Barron's choice to satisfy cost-recovery fees from his VA benefits does not violate § 5301 because Barron has not shown that TCCO is attaching, garnishing, or levying his benefits. *Cf. Fetterusso v. New York*, 898 F.2d 322, 324–25, 327–28 (2d Cir. 1990) (holding that civilly-committed mental health patients who satisfied costs of care and treatment using Social Security benefits did not violate § 407(a) because they voluntarily did so). Moreover, the calculation of the cost-recovery fee based on the

17

amount Barron receives in VA benefits does not violate § 5301. *See Hawes*, 964 F.3d at 417 (observing that § 5301 does not prohibit "assets acquired from VA benefits [from] be[ing] taken into account for purposes of determining whether a litigant is eligible for *in forma pauperis* status").

The undersigned therefore recommends that the district judge grant McLane's Rule 12(b)(6) motion and dismiss Barron's § 5301 claims against McLane in her official capacity for injunctive relief and against McLane in her individual capacity.

### E.    McLane is entitled to qualified immunity.

Even if Barron has shown a violation of his constitutional or statutory rights, McLane asserts that she is entitled to qualified immunity on the individual-capacity claims. Dkt. No. 10 at 19–23. McLane argues that it was not clearly established that: (1) "TCCO's cost-recovery fees or requirement that committed persons provide financial information for the determination of indigency constitute 'seizures' under the Fourth Amendment"; (2) imposition of the fee "without an individualized hearing distinct from the adjudication of Plaintiff as an SVP violates the Fourteenth Amendment"; and (3) "assessment of TCCO's cost-recovery fees from veteran's disability benefits or the inclusion of such benefits in determining the value to be paid violates the anti-assignment provision." *Id.* at 21–22.

"When a public official makes 'a good-faith assertion of qualified immunity,' that 'alters the usual summary-judgment burden of proof, shifting it to the plaintiff to show that the defense is not available.'" *Joseph ex. rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 329–30 (5th Cir. 2020) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir.

18

2016)). Instead of the public official showing "an absence of genuine disputes of material fact and entitlement to judgment as a matter of law," "[t]he plaintiff must show that there is a genuine dispute of material fact and that a jury could return a verdict entitling the plaintiff to relief for a constitutional injury." *Id.* at 330. "[A] plaintiff has the additional burden to show that the violated right was 'clearly established' at the time of the alleged violation." *Id.* at 329 (citing *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)). "This requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution." *Id.* at 330 (internal quotation marks and brackets omitted) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018)). "While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate." *Id.* (internal quotation marks omitted) (quoting same). "This leaves the rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Id.* (internal quotation marks and brackets omitted) (quoting same).

Barron has not met his burden of pleading facts overcoming McLane's defense of qualified immunity. He has presented no case or body of cases clearly establishing the violations as to any of his claims. *See* Dkt. Nos. 11, 13. Thus, he has not met his burden. *See Roque v. Harvel*, 993 F.3d 325, 334 (5th Cir. 2021) (explaining that a "plaintiff must identify a case . . . in which an officer acting under similar circumstances was he=ld to have violated the Constitution[,]" and that while the plaintiff is not required to "find a

19

case directly on point," "existing precedent must have placed the . . . constitutional question beyond debate." (internal quotation marks and citations omitted)); *Morrow v. Meachum*, 917 F.3d 870, 874–75 (5th Cir. 2019) (emphasizing that courts "must frame the constitutional question with specificity and granularity" and that "clearly established law comes from holdings, not dicta"). Accordingly, McLane is entitled to qualified immunity on the individual-capacity claims.

Given this conclusion, along with Barron's failure to plead a constitutional or statutory violation, the Court need not reach McLane's assertion that Barron has failed to show she was personally involved in a violation. Even so, the Court agrees that Barron makes only conclusory allegations concerning McLane's purported implementation and enforcement of an unlawful policy. *See* Dkt. No. 1 at 5 (claiming that McLane used Barron's case manager "to ensure that [Barron] consistently paid the required fee" and that "upon information and belief," McLane "set up the policy requiring Plaintiff and other TCCC residents to pay 33% and later 25% of all income received). Further, even if Barron had shown McLane was personally involved, he has not identified the policy that McLane allegedly implemented that violated his rights. For these reasons, in addition to those identified above, Barron's individual-capacity claims against McLane fail.

### 3. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge (1) **GRANT-in-part** McLane's Rule 12(b)(1) motion and dismiss without prejudice Barron's official-capacity claims against McLane for money damages and

retrospective declaratory relief; and (2) **GRANT** McLane's Rule 12(b)(6) motion and dismiss with prejudice Barron's claims against McLane in her official capacity for injunctive relief and those against McLane in her individual capacity.

**4.      Right to Object**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. See 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: February 13, 2025.

AMANDA 'AMY' R. BURCH
UNITED STATES MAGISTRATE JUDGE

21